E. Evans Wohlforth, Jr.
Allana L. Nason
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4583
*Attorneys for Defendant*
*Connecticut General Life Insurance Company*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAIN & SURGERY AMBULATORY CENTER, P.C. as assignee and authorized representative of CHRISTINE DENOLA, CELIA GONZALEZ, IRENE PERCIA, ROBERT POST, DEIRDRA SCARPULLA, and SUSAN WILAMOWSKI,<br><br>    Plaintiff,<br><br>  vs.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY<br><br>    Defendant. | Civil Action No.: _____<br><br>*Document Electronically Filed*<br><br>**NOTICE OF REMOVAL**<br><br>[Previously pending in the Superior Court of New Jersey, Bergen County, Law Division, BER-L-6630-11] |

TO:   The Judges of the United States District
      Court for the District of New Jersey

Pursuant to 28 U.S.C. §§ 1441(b)(c) and 1446, Defendant Connecticut General Life

Insurance Company ("Defendant" or "CGLIC") hereby removes the above-entitled action from

the Superior Court of New Jersey, Law Division, Bergen County, to the United States District

Court for the District of New Jersey.  For the reasons stated below, removal of this action is

proper because Plaintiff Pain & Surgery Ambulatory Center, P.C. ("Plaintiff" or "PSAC")

challenges the denial of benefits under health benefits plans governed by the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, et seq., ("ERISA"); therefore, ERISA

1

governs Plaintiff's claims and this Court has federal question jurisdiction under 28 U.S.C. § 1331.  In the alternative, removal is proper because this Court has original jurisdiction over this matter pursuant to its diversity jurisdiction 28 U.S.C. § 1332.  As to any cause of action not subject to this Court's original jurisdiction under 28 U.S.C. § 1331, this Court also has supplemental jurisdiction under 28 U.S.C. §§ 1367 and 1441(c).

## I.     PROCEEDINGS TO DATE

1.     A complaint bearing the caption above was filed by Plaintiff on August 3, 2011, in the Superior Court of New Jersey, Law Division, Bergen County.  A true and correct copy of the Complaint is attached hereto as Exhibit A and is incorporated herein by reference.  On or after August 12, 2011, a Summons and the Complaint were formally served upon Defendant.

2.     The Complaint names Connecticut General Life Insurance Company as the sole defendant.  Therefore, there is no other defendant from which consent must be obtained for this removal.

## II.     PLAINTIFF'S COMPLAINT

3.     Plaintiff states that it is "a New Jersey professional corporation" that "owns and operates an outpatient surgical facility" in Wyckoff, New Jersey.  Complaint ¶ 1.  The Complaint further states that Plaintiff and Defendant "have not entered into a 'Participating Provider Agreement,' thus PSAC is an 'Out-of-Network' provider as it relates to CGLIC."  Complaint ¶ 10.

4.     The Complaint alleges that for each of the named patient beneficiaries, Defendant denied claims for "facility services rendered."  Complaint ¶¶ 24-5, 32-3, 40-1, 48-9, 56-7, 64-5. The alleged total amount of claims denied is $166,950.  See Id.

5.     On information provided in Plaintiff's Complaint and belief, Plaintiff is the assignee of each of its named patient's rights to benefits under various ERISA-governed employee benefit plans.  See Complaint at ¶¶ 17, 22 ("PSAC has been authorized by DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI, through the execution of an assignment of benefits and clams [sic], to represent them in this action against CGLIC seeking benefits under their Plans." Id. at 17.).

6.     The Complaint sets forth a single count expressly relying upon ERISA:  Claim for Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B).  See Complaint ¶¶ 71-3.  Plaintiff's Complaint correspondingly alleges that CGLIC refused to reimburse Plaintiff for facility services provided to its patients and plan beneficiaries.  See Complaint ¶ 72 (contending CGLIC's determinations were "arbitrary, capricious, and manifestly mistaken").  Finally, Plaintiff seeks damages based on those determinations.  See Complaint ¶ 73 ("wherefore" clause seeking (a) declaration that CGLIC violated plan duties, (b) instruction that CGLIC pay benefits to Plaintiff, (c) prejudgment interest, (d) counsel fees, (e) costs, and (f) other relief deemed equitable and just).

7.     Plaintiff's entire Complaint, therefore, challenges Defendant's alleged refusal to pay for services rendered to members of plans administered by Defendant, and seeks damages allegedly resulting from that refusal and pursuant to ERISA.

### III.     PLAINTIFF'S HEALTH BENEFITS PLANS

8.     Plaintiff alleges that each of its named patients is a "beneficiary" (as defined by 29 U.S.C. § 1002(8)) of an "Employee Health Benefit Plan" (as defined by 29 U.S.C. § 1002(1)) sponsored by his or her employer.  See Complaint ¶¶ 11-6.

9.     Based upon Plaintiff's own allegation, the employee health benefits plans are governed and controlled by ERISA.  See 29 U.S.C. § 1002(1)(A).

### IV.    GROUNDS FOR REMOVAL -- FEDERAL QUESTION

10.    Because Plaintiff challenges a denial of benefits under ERISA-governed plans, as described above, its claims are completely governed by ERISA and removable to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1441(b).  As the Supreme Court of the United States has repeatedly held, the "carefully integrated civil enforcement provisions" in Section 502(a) of ERISA, 29 U.S.C. § 1132(a), set forth the "exclusive" remedies available for the allegedly erroneous denial, non-payment or underpayment of benefits available under an ERISA-governed health benefits plan.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).

### V.  GROUNDS FOR REMOVAL -- DIVERSITY JURISDICTION

11.    A matter may be removed to this Court if this Court has original jurisdiction over it pursuant to 28 U.S.C. § 1331.  Section 1332 of Title 28 of the United States Code provides that this Court shall have original jurisdiction over controversies between citizens of different States in which the amount in controversy is in excess of $75,000, exclusive of interest and costs, and which is between citizens of different states.  Diversity of jurisdiction exists in this case because Plaintiff is a citizen of New Jersey and Defendant CGLIC is a citizen of Connecticut.

12.    Upon information provided in the Complaint and belief, Plaintiff is a New Jersey professional corporation with its principal place of business at 461 Goffle Road, Wyckoff, New Jersey.

13.    CGLIC is a corporation formed and existing under the laws of the State of Connecticut with its principal place of business at 900 Cottage Grove Road, Bloomfield, Connecticut.

14.    For purposes of analyzing diversity jurisdiction, Plaintiff is a citizen of New Jersey and CGLIC is a citizen of Connecticut.  28 U.S.C. §§ 1332(a)(1) and (c)(1).

15.     In addition to prejudgment interest, counsel fees, and costs, Plaintiff seeks payment of the denied claims.  See Complaint ¶ 73.  The alleged total amount of claims denied is $166,950.  See Complaint ¶¶ 24-5, 32-3, 40-1, 48-9, 56-7, 64-5.

16.     Because Defendant CGLIC is a citizen of a different state than Plaintiff and the amount in controversy is in excess of $75,000, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VI.  SUPPLEMENTAL JURISDICTION

17.     If the Court were to find that removal based upon diversity jurisdiction is not appropriate and that any claim asserted by Plaintiff is not subject to this Court's federal question jurisdiction, removal would still be proper based on the preemption of Plaintiff's claims concerning ERISA-governed benefits, and this Court would have supplemental jurisdiction over any non-preempted claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

## VII.   VENUE

18.     Plaintiff filed the Complaint in the Superior Court of New Jersey, Bergen County, which is within this judicial district.  See 28 U.S.C. § 110.  This Court is therefore the proper court for removal under 28 U.S.C. §§ 1441(a), 1446(a).

## VIII.   TIMELINESS

19.     This Notice of Removal is timely filed because thirty days since service of the Complaint on Defendant expires on or after September 12, 2011.

20.     As of this date, Defendant has not filed any responsive pleading and no other proceedings have taken place in this action.

## IX.    NOTICE

21.    Defendant will give written notice of the filing of this Notice of Removal to Plaintiff's counsel of record, as required by 28 U.S.C. § 1446(d), and a copy of this Notice, together with a Notice of Notice of Removal, in the form attached hereto as Exhibit D, will be filed with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

## X.    CONCLUSION

22.    This Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11, as required by 28 U.S.C. § 1446(c).

23.    Based on the foregoing, Defendant respectfully requests that this action proceed in this Court as an action properly removed to it.

Respectfully submitted,

Dated: September 9, 2011          By:  s/E. Evans Wohlforth, Jr.
       Newark, New Jersey              E. Evans Wohlforth, Jr.
                                       Allana L. Nason
                                       **GIBBONS P.C.**
                                       One Gateway Center
                                       Newark, NJ  07102-5310
                                       Tel:  (973) 596-4879
                                       Fax:  (973) 639-6486
                                       *Attorneys for Defendant Connecticut General Life*
                                       *Insurance Company.*

**EXHIBIT A**

John W. Leardi
Paul D. Werner
**BUTTACI & LEARDI, LLC**
103 Carnegie Center, Suite 101
Princeton, New Jersey 08540
609.799.5150
609.799.5180 FAX
*Attorneys for Plaintiff*
*Pain and Surgery Ambulatory Center, P.C.*

COPY

SUPERIOR COURT BERGEN COUNTY
FILED

AUG - 3 2011

DEPUTY CLERK

|  |  |
|---|---|
| PAIN & SURGERY AMBULATORY CENTER, P.C., as assignee and authorized representative of CHRISTINE DENOLA, CELIA GONZALEZ, IRENE PERCIA, ROBERT POST, DEIRDRA SCARPULLA, and SUSAN WILAMOWSKI, | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY: LAW DIVISION |
|  | Docket No. _____ L. 66 30-4 |
| Plaintiff, | CIVIL ACTION |
| - v. - | **COMPLAINT** |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, |  |
| Defendant. |  |

Plaintiff PAIN & SURGERY AMBULATORY CENTER, P.C. ("PLAINTIFF" or "PSAC"), as assignee and authorized representative of CHRISTINE DENOLA ("DENOLA"), CELIA GONZALEZ ("GONZALEZ"), IRENE PERCIA ("PERCIA"), ROBERT POST ("POST"), DEIRDRA SCARPULLA ("SCARPULLA"), and SUSAN WILAMOWSKI ("WILAMOWSKI"), by way of this Complaint against CONNECTICUT GENERAL LIFE INSURANCE COMPANY ("DEFENDANT" or "CGLIC"), hereby alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through his attorneys, as follows:

## PARTIES

A.   **Plaintiff Pain & Surgery Ambulatory Center, P.C.**

1.      PSAC is a New Jersey professional corporation, whose shareholders consist exclusively of duly-licensed New Jersey physicians (the "Physician-Shareholders"). PSAC owns and operates an outpatient surgical facility at 461 Goffle Road, Wyckoff, NJ, 07481 (the "Facility"), which is an extension of is Physician-Shareholders' private medical practices.

2.      The Facility has one room dedicated for use as an operating room, which is specifically equipped to perform surgery and is designed and constructed to accommodate invasive diagnostic and surgical procedures. The Facility also includes a dedicated recovery area where patients who undergo invasive diagnostic and surgical procedures may be closely monitored and observed by the Facility's staff until they can be safely discharged.

3.      Every invasive diagnostic and surgical procedure performed at the Facility is personally performed by the Shareholder-Physician who referred the patient to the Facility from his or her private medical practice, and each Shareholder-Physician's remuneration from PSAC is directly proportional to his or her ownership interest in PSAC and not based upon the volume or value of patients the Shareholder-Physician refers to the facility.

4.      The Facility is also certified by the Centers for Medicare and Medicaid Services ("CMS") as an Ambulatory Surgical supplier of services.

5.      The Facility is a "Surgical Practice" as the term is defined by both *N.J.S.A.* 26:2H-12(g)(5) and *N.J.A.C.* 8:43A-1.3 and is, therefore, not required to obtain a licensed from the New Jersey Department of Health and Senior Services ("DHSS"). Instead, the Facility is merely required to register with DHSS as a Surgical Practice and remains primarily regulated as a private medical practice by the New Jersey State Board of Medical Examiners.

6. Pursuant to *N.J.A.C.* 13:35-6.17, PSAC may charge its patients so-called "facility fees" with respect to surgical facility services provided by PSAC. These facility fees compensate PSAC for the costs associated with operating and maintaining a safe, clean, comfortable, and CMS-certified surgical facility. Notably, facility fees are separate and distinct from the so-called "professional fees" charged to PSAC's patients with respect to professional medical and surgical services provided by PSAC's Physician-Shareholders.

**B. Defendant Connecticut General Life Insurance Company**

7. Upon information and belief, CGLIC is a general business corporation formed and existing under the laws of the State of Connecticut with its principal place of business at 900 Cottage Grove Road, Bloomfield, CT 06002.

8. Upon information and belief, CGLIC is an operating subsidiary of CIGNA Corporation that conducts business under the trade names "CIGNA" and "CIGNA HealthCare" and maintains an office at 499 Washington Street, Jersey City, NJ 07310.

9. Upon information and belief, CGLIC offers, underwrites, and administers commercial health plans ("Plan" or "Plans"), through which healthcare expenses incurred by Plan insureds ("Insureds") for services and/or products covered by the Plans ("Covered Services") are reimbursed by and/or through CGLIC, subject to each Plan's terms.

10. CGLIC and PSAC have not entered into a "Participating Provider Agreement," thus PSAC is an "Out-of-Network" provider as it relates to CGLIC.

**C. PSAC's Patients on whose Behalf the Benefit Claims Herein are Asserted**

11. At all times relevant hereto, DENOLA was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by PAR PHARMACUETICAL COMPANIES, and administered by

CGLIC. DENOLA resides at 989 Garibaldi Plan, Washington Township, NJ 07676.

12.     At all times relevant hereto, GONZALEZ was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by ESTEE LAUDER COMPANY, and administered by CGLIC. GONZALEZ resides at 383 East 29th Street, Paterson, NJ 07514.

13.     At all times relevant hereto, PERCIA was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by PENSKE AUTOMOTIVE GROUP, and administered by CGLIC. PERCIA resides at 429 7th Street, Carlstadt, NJ 07072.

14.     At all times relevant hereto, POST was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by PIPEFITTERS LOCAL UNION 274, and administered by CGLIC. POST resides at 9 Taylor Lane, West Paterson, NJ 07424.

15.     At all times relevant hereto, SCARPULLA was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by VALLEY HOSPITAL, and administered by CGLIC. SCARPULLA resides at 3 Golf Avenue, Maywood, NJ 07607.

16.     At all times relevant hereto, WILAMOWSKI was a "beneficiary," as defined by 29 U.S.C. §1002(8), in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1), which was sponsored by FIRST AVIATION SERVICES, and administered by CGLIC. WILAMOWSKI resides at 3530 Henry Hudson Parkway, Riverdale, NY 10463.

17.     PSAC has been authorized by DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI, through the execution of an assignment of benefits and

clams, to represent them in this action against CGLIC seeking benefits under their Plans.

## JURISDICTION AND VENUE

18.     CGLIC's actions in administering the Plans are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461 ("ERISA"). This Court, therefore, has subject matter jurisdiction over the claim for benefits brought under 29 U.S.C. § 1132(a)(1)(B) herein pursuant to 29 U.S.C. § 1132(e).

19.     This Court has personal jurisdiction over CGLIC because CGLIC regularly transacts business in New Jersey and because the claims for benefits brought under 29 U.S.C. § 1132(a)(1)(B) herein arises directly out of the CGLIC's activities in New Jersey.

20.     Pursuant to R. 4:3-2, venue is appropriate in Bergen County based on the location of the PSAC's principal place of business in Wyckoff, NJ.

## STANDING

21.     As beneficiaries of the Plans as that term is defined in 29 U.S.C. § 1002(8), DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI each have standing to bring this action under 29 U.S.C. § 1132 (a)(1)(B).

22.     By and through an assignment of benefits and claims, DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI have designated PSAC as their "authorized representative," as defined in 29 C.F.R. § 2560.503-1, and PSAC may, therefore, bring this action on behalf of DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI under 29 U.S.C. § 1132 (a)(1)(B).

## FACTUAL ALLEGATIONS

**A.     Christine Denola's Claim for Benefits**

23.     DENOLA underwent invasive diagnostic and/or surgical procedures at the

Facility on 6/25/09, 7/9/09, 7/16/09, 7/23/09, 7/30/09, 8/27/09, 10/15/09, 10/28/09, 11/24/09, 12/17/09, and 4/15/10. Prior to undergoing said procedures, DENOLA executed an assignment of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance company that is obligated by contract to make payment to me. I authorize you to take action in either my name or your name to resolve this claim. It is understood that all reasonable efforts will be made to collect from the insurance company before I will be responsible for this bill. I do understand that whatever amounts are not collected from the insurance company do become my responsibility and I am to pay these charges as soon as possible.

24.     Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC for facility services rendered to DENOLA on 6/25/09, 7/9/09, 7/16/09, 7/23/09, 7/30/09, 8/27/09, 10/15/09, 10/28/09, 11/24/09, 12/17/09, and 4/15/10 totaling $58,500.

25.     In each instance, CGLIC denied DENOLA's claims, alleging that DENOLA's Plan did not provide coverage for facility fees billed by "unlicensed" providers.

26.     Nevertheless, DENOLA's Plan specifically provides coverage for "Outpatient Facility Services," which as facility fees, are separate and distinct from professional fees.

27.     And while PSAC, as a CMS-certified surgical facility and Surgical Practice registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as defined by DENOLA's Plan, it does qualify as an "Other Health Care Facility," which is defined by DENOLA's Plan as "a facility other than a Hospital or hospice facility."

28.     DENOLA's Plan does not limit coverage for "Outpatient Facility Services" to any particular type of facility, such as a Free Standing Surgical Facility. As such, DENOLA is entitled to benefits under her PLAN for facility fees billed by PSAC and CGLIC's denial of benefits relating to same was arbitrary, capricious, and manifestly mistaken.

29.     PSAC, on DENOLA's behalf did seek a reversal of the adverse benefit determinations. For example, PSAC submitted multiple written appeals directly to CGLIC,

supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel explaining PSAC's legal status as a Surgical Practice under New Jersey law.

30.     Nevertheless, CGLIC denied each of PSAC's appeals on behalf of DENOLA, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under DENOLA's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and noted DENOLA's right to file suit under § 502(a) of ERISA.

**B.    Celia Gonzalez's Claim for Benefits**

31.     GONZALEZ underwent invasive diagnostic and/or surgical procedures at the Facility on 4/16/10, 5/7/10, and 5/21/10. Prior to undergoing said procedures, GONZALEZ executed an assignment of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance company that is obligated by contract to make payment to me. I authorize you to take action in either my name or your name to resolve this claim. It is understood that all reasonable efforts will be made to collect from the insurance company before I will be responsible for this bill. I do understand that whatever amounts are not collected from the insurance company do become my responsibility and I am to pay these charges as soon as possible.

32.     Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC for facility services rendered to GONZALEZ on 4/16/10, 5/7/10, and 5/21/10 totaling $17,550.

33.     In each instance, CGLIC denied GONZALEZ's claims, alleging that GONZALEZ's Plan did not provide coverage for facility fees billed by "unlicensed" providers.

34.     Nevertheless, GONZALEZ's Plan specifically provides coverage for "Outpatient Facility Services," which as facility fees, are separate and distinct from professional fees.

35.     And while PSAC, as a CMS-certified surgical facility and Surgical Practice registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as

defined by GONZALEZ's Plan, it does qualify as an "Other Health Care Facility," which is defined by GONZALEZ's Plan as "a facility other than a Hospital or hospice facility."

36.    GONZALEZ's Plan does not limit coverage for "Outpatient Facility Services" to any particular type of facility, such as a Free Standing Surgical Facility. As such, GONZALEZ is entitled to benefits under her PLAN for facility fees billed by PSAC and CGLIC's denial of benefits relating to same was arbitrary, capricious, and manifestly mistaken.

37.    PSAC, on GONZALEZ's behalf did seek a reversal of the adverse benefit determinations. For example, PSAC submitted multiple written appeals directly to CGLIC, supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel explaining PSAC's legal status as a Surgical Practice under New Jersey law.

38.    Nevertheless, CGLIC denied each of PSAC's appeals on behalf of GONZALEZ, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under GONZALEZ's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and noted GONZALEZ's right to file suit under § 502(a) of ERISA.

**C.    Irena Percia's Claim for Benefits**

39.    PERCIA underwent invasive diagnostic and/or surgical procedures at the Facility on 7/28/09, 8/27/09, and 9/10/09. Prior to undergoing said procedures, PERCIA executed an assignment of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance company that is obligated by contract to make payment to me. I authorize you to take action in either my name or your name to resolve this claim. It is understood that all reasonable efforts will be made to collect from the insurance company before I will be responsible for this bill. I do understand that whatever amounts are not collected from the insurance company do become my responsibility and I

am to pay these charges as soon as possible.

40.     Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC for facility services rendered to PERCIA on 7/28/09, 8/27/09, and 9/10/09 totaling $25,300.

41.     In each instance, CGLIC denied PERCIA's claims, alleging that PERCIA's Plan did not provide coverage for facility fees billed by "unlicensed" providers.

42.     Nevertheless, PERCIA's Plan specifically provides coverage for "Outpatient Facility Services," which as facility fees, are separate and distinct from professional fees.

43.     And while PSAC, as a CMS-certified surgical facility and Surgical Practice registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as defined by PERCIA's Plan, it does qualify as an "Other Health Care Facility," which is defined by PERCIA's Plan as "a facility other than a Hospital or hospice facility."

44.     PERCIA's Plan does not limit coverage for "Outpatient Facility Services" to any particular type of facility, such as a Free Standing Surgical Facility. As such, PERCIA is entitled to benefits under her PLAN for facility fees billed by PSAC and CGLIC's denial of benefits relating to same was arbitrary, capricious, and manifestly mistaken.

45.     PSAC, on PERCIA's behalf did seek a reversal of the adverse benefit determinations. For example, PSAC submitted multiple written appeals directly to CGLIC, supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel explaining PSAC's legal status as a Surgical Practice under New Jersey law.

46.     Nevertheless, CGLIC denied each of PSAC's appeals on behalf of PERCIA, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under PERCIA's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and

noted PERCIA's right to file suit under § 502(a) of ERISA.

**D.     Robert Post's Claim for Benefits**

47.     POST underwent invasive diagnostic and/or surgical procedures at the Facility on

3/5/09, 4/30/09, 5/15/09, 7/9/09, 9/3/09, and 11/5/09. Prior to undergoing said procedures, POST

executed an assignment of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance
> company that is obligated by contract to make payment to me. I authorize you to
> take action in either my name or your name to resolve this claim. It is understood
> that all reasonable efforts will be made to collect from the insurance company
> before I will be responsible for this bill. I do understand that whatever amounts
> are not collected from the insurance company do become my responsibility and I
> am to pay these charges as soon as possible.

48.     Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC

for facility services rendered to POST on 3/5/09, 4/30/09, 5/15/09, 7/9/09, 9/3/09, and 11/5/09

totaling $31,850.

49.     In each instance, CGLIC denied POST's claims, alleging that POST's Plan did

not provide coverage for facility fees billed by "unlicensed" providers.

50.     Nevertheless, POST's Plan specifically provides coverage for "Outpatient Facility

Services," which as facility fees, are separate and distinct from professional fees.

51.     And while PSAC, as a CMS-certified surgical facility and Surgical Practice

registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as

defined by POST's Plan, it does qualify as an "Other Health Care Facility," which is defined by

POST's Plan as "a facility other than a Hospital or hospice facility."

52.     POST's Plan does not limit coverage for "Outpatient Facility Services" to any

particular type of facility, such as a Free Standing Surgical Facility. As such, POST is entitled to

benefits under his PLAN for facility fees billed by PSAC and CGLIC's denial of benefits

relating to same was arbitrary, capricious, and manifestly mistaken.

53.   PSAC, on POST's behalf did seek a reversal of the adverse benefit determinations. For example, PSAC submitted multiple written appeals directly to CGLIC, supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel explaining PSAC's legal status as a Surgical Practice under New Jersey law.

54.   Nevertheless, CGLIC denied each of PSAC's appeals on behalf of POST, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under POST's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and noted POST's right to file suit under § 502(a) of ERISA.

**E.    Deirdra Scarpulla's Claim for Benefits**

55.   SCARPULLA underwent invasive diagnostic and/or surgical procedures at the Facility on 5/27/10, 6/4/10, 6/10/10, and 6/17/10. Prior to undergoing said procedures, SCARPULLA executed an assignment of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance company that is obligated by contract to make payment to me. I authorize you to take action in either my name or your name to resolve this claim. It is understood that all reasonable efforts will be made to collect from the insurance company before I will be responsible for this bill. I do understand that whatever amounts are not collected from the insurance company do become my responsibility and I am to pay these charges as soon as possible.

56.   Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC for facility services rendered to SCARPULLA on 5/27/10, 6/4/10, 6/10/10, and 6/17/10 totaling $23,650.

57.   In each instance, CGLIC denied SCARPULLA's claims, alleging that SCARPULLA's Plan did not provide coverage for facility fees billed by "unlicensed" providers.

58.     Nevertheless, SCARPULLA's Plan specifically provides coverage for "Outpatient Facility Services," which as facility fees, are separate and distinct from professional fees.

59.     And while PSAC, as a CMS-certified surgical facility and Surgical Practice registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as defined by SCARPULLA's Plan, it does qualify as an "Other Health Care Facility," which is defined by SCARPULLA's Plan as "a facility other than a Hospital or hospice facility."

60.     SCARPULLA's Plan does not limit coverage for "Outpatient Facility Services" to any particular type of facility, such as a Free Standing Surgical Facility. As such, SCARPULLA is entitled to benefits under his PLAN for facility fees billed by PSAC and CGLIC's denial of benefits relating to same was arbitrary, capricious, and manifestly mistaken.

61.     PSAC, on SCARPULLA's behalf did seek a reversal of the adverse benefit determinations. For example, PSAC submitted multiple written appeals directly to CGLIC, supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel explaining PSAC's legal status as a Surgical Practice under New Jersey law.

62.     Nevertheless, CGLIC denied each of PSAC's appeals on behalf of SCARPULLA, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under SCARPULLA's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and noted SCARPULLA's right to file suit under § 502(a) of ERISA.

F.      **Susan Wilamowski's Claim for Benefits**

63.     WILAMOWSKI underwent invasive diagnostic and/or surgical procedures at the Facility on 3/9/10. Prior to undergoing said procedures, WILAMOWSKI executed an assignment

- 12 -

of benefits and claims to PSAC, which states, in relevant part:

> I hereby assign and give to you the right to take action against my insurance
> company that is obligated by contract to make payment to me. I authorize you to
> take action in either my name or your name to resolve this claim. It is understood
> that all reasonable efforts will be made to collect from the insurance company
> before I will be responsible for this bill. I do understand that whatever amounts
> are not collected from the insurance company do become my responsibility and I
> am to pay these charges as soon as possible.

64.    Pursuant to the above assignment, PSAC timely submitted bills directly to CGLIC

for facility services rendered to WILAMOWSKI on 3/9/10 totaling $10,100.

65.    In each instance, CGLIC denied WILAMOWSKI's claims, alleging that
WILAMOWSKI's Plan did not provide coverage for facility fees billed by "unlicensed"
providers.

66.    Nevertheless, WILAMOWSKI's Plan specifically provides coverage for
"Outpatient Facility Services," which as facility fees, are separate and distinct from professional
fees.

67.    And while PSAC, as a CMS-certified surgical facility and Surgical Practice
registered but not licensed by DHSS does not qualify as a "Free Standing Surgical Facility" as
defined by WILAMOWSKI's Plan, it does qualify as an "Other Health Care Facility," which is
defined by WILAMOWSKI's Plan as "a facility other than a Hospital or hospice facility."

68.    WILAMOWSKI's Plan does not limit coverage for "Outpatient Facility Services"
to any particular type of facility, such as a Free Standing Surgical Facility. As such,
WILAMOWSKI is entitled to benefits under his PLAN for facility fees billed by PSAC and
CGLIC's denial of benefits relating to same was arbitrary, capricious, and manifestly mistaken.

69.    PSAC, on WILAMOWSKI's behalf did seek a reversal of the adverse benefit
determinations. For example, PSAC submitted multiple written appeals directly to CGLIC,
supplying CGLIC with copies of its CMS certification and a memorandum drafted by its counsel

explaining PSAC's legal status as a Surgical Practice under New Jersey law.

70.     Nevertheless, CGLIC denied each of PSAC's appeals on behalf of WILAMOWSKI, communicating its denials directly to PSAC. The stated basis for CGLIC's denials was that PSAC did not qualify as a Free Standing Surgical Facility under WILAMOWSKI's Plan. CGLIC did not reference, however, the Plan definition of Other Health Care Facility. Notably, in communicating its final denial, CGLIC informed PSAC that it exhausted the administrative review process and noted WILAMOWSKI's right to file suit under § 502(a) of ERISA.

### FIRST COUNT
### (Claim for Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B))

71.     PSAC repeats and re-alleges each and every allegation contained in Paragraphs 1 to 70 of the Complaint as if set forth at length herein.

72.     By failing to pay benefits to PSAC for facility services provided to DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI, CGLIC violated obligations set forth in its Plans, and such denials were arbitrary, capricious, and manifestly mistaken.

73.     Because DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI were beneficiaries of their respective Plans, and because PSAC is the authorized representative of DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI, PSAC has standing to bring this cause of action under 29 U.S.C. § 1132(a)(1)(B) to enforce rights created by the Plans and to seek benefits relating to facility services provided by PSAC to DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI.

**WHEREFORE,** Plaintiff PSAC, as the authorized representative of DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI, demands judgment against

Defendant CGLIC, as follows: (a) declaring that Defendant CGLIC violated its duties and obligations under the Plans by failing to pay benefits relating to facility services provided by PSAC to DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI; (b) directing Defendant CGLIC to pay benefits to PSAC relating to facility services provided by PSAC to DENOLA, GONZALEZ, PERCIA, POST, SCARPULLA, and WILAMOWSKI; (c) prejudgment interest; (d) attorney's fees pursuant to 29 *U.S.C.* § 1132(g)(1); (e) costs pursuant to 29 U.S.C. § 1132(g)(1); and (f) such other relief as the Court may deem equitable and just.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c), John W. Leardi, Esq., is hereby designated as trial counsel on behalf of Plaintiff.

### CERTIFICATION UNDER R. 4:5-1

The undersigned hereby certifies that (1) the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding, and that no such court action or arbitration proceeding is contemplated; (2) it is unknown at this time whether any other parties should be joined in this action.

Respectfully submitted,

**BUTTACI & LEARDI, LLC**
*Attorneys for Plaintiff*
*Pain and Surgery/Ambulatory Center, P.C.*

By: _____

Paul D. Werner
An Attorney of the Firm

DATED: July 27, 2011

- 15 -