UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAIN & SURGERY AMBULATORY CENTER, P.C., as assignee and authorized representative of CHRISTINE DENOLA, CELIA GONZALEZ, IRENE PERCIA, ROBERT POST, DEIRDRA SCARPULLA, and SUSAN WILAMOWSKI,<br><br>*Plaintiff*,<br><br>v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY.<br><br>*Defendant*. | Case No. 2:11-cv-5209(KSH)(PS) |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

John W. Leardi
Paul D. Werner
**BUTTACI & LEARDI, LLC**
103 Carnegie Center, Suite 101
Princeton, New Jersey 08540
609-799-5150
609-799-5180 FAX
*Attorneys for Plaintiff*
*Pain and Surgery Ambulatory Center, P.C.*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

LEGAL ARGUMENT .......................................................................................................3

    I.    STANDARD OF REVIEW ...................................................................3

    II.    THE DEFINITION OF OTHER HEALTH CARE FACILITY
           IS NOT UNAMBIGUOUS TO THE "AVERAGE" INSURED ...............4

    III.    CGLIC CANNOT IRREFUTABLY DEMONSTRATE THAT
           AN EXCLUSIONARY CLAUSE WITHIN THE PLAN APPLIES .........6

    IV.    CGLIC INSUREDS ARE ENTITLED TO COVERAGE TO THE
           FULL EXTENT ANY FAIR INTERPRETATION WILL ALLOW ......13

CONCLUSION ................................................................................................16

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Barker v. Iowa Mut. Ins. Co.*, 241 N.C. 397 (1955) .................................................. 13

*Brunswick Surgical Ctr., LLC v. Cigna Healthcare*,
    2010 U.S. Dist. LEXIS 85043 (D.N.J. Aug. 18, 2010) .......................... 6, 7, 8

*Caffey v. UNUM Life Ins. Co.*,
    302 F.3d 576 (6th Cir. 2002) ..................................................................... 8

*Cal-Farm Ins. Co. v. Boisseranc*,
    151 Cal.App.2d 775 (D.C. App. 1957) ...................................................... 9

*Danek v. Hommer*,
    28 N.J. Super. 68 (App. Div. 1953), *aff'd* 15 N.J. 573 (1954) ........................ 5

*Di Orio v. New Jersey Mfrs. Ins. Co.*,
    79 N.J. 257 (1979) .................................................................................. 4

*Fidelity & Casualty Co. v. Carll & Ramagosa, Inc.*,
    243 F. Supp. 481 (D.N.J. 1965) ....................................................... 5, 9, 12, 13

*Frerking v. Blue Cross-Blue Shield of Kan.*,
    760 F. Supp. 877 (D. Kan. 1991) ............................................................... 8

*Glocker v. W.R. Grace & Co.*,
    974 F.2d 540 (4th Cir. 1992) .................................................................... 13

*Kievit v. Loyal Protective Life Ins. Co.*,
    34 N.J. 475 (1961) ............................................................................. 5, 9, 13

*Liberty Mut. Ins. Co. v. Hercules Powder Co.*,
    224 F.2d 293 (3d Cir 1955) ...................................................................... 9

*McGee v. Equicor-Equitable HCA Corp.*,
    953 F.2d 1192 (10th Cir. 1992) ................................................................. 8

*Phillips v. Lincoln Nat. Life Ins. Co.*,
    978 F.2d 302 (7th Cir. 1992) .................................................................. 13

*Weedo v. Stone-E-Brick, Inc.*,
 81 N.J. 233 (1979) ...................................................................................................4

**STATUTES**

29 *U.S.C.* § 1132 (a)(1)(B)......................................................................................1

*N.J.S.A.* 26:2H-12(g)(5) ........................................................................................10

**RULES**

Local Civil Rule 56.1 ...............................................................................................3

**REGULATIONS**

*N.J.A.C.* 8:43A-1.3................................................................................................10

**OTHER AUTHORITIES**

*Merriam-Webster's Collegiate Dictionary* 878-879 (11th ed. 2003).........................7

Plaintiff Pain & Surgery Ambulatory Center, P.C. ("PSAC"), as assignee and authorized representative of Christine Denola ("Denola"), Celia Gonzalez ("Gonzalez"), Irene Percia ("Percia"), Robert Post ("Post"), Deidra Scarpulla ("Scarpulla"), and Susan Wilamowski ("Wilamowski"), hereby submits this Memorandum of Law in Opposition to the Motion for Summary Judgment (Dkt. 19) filed by Defendant Connecticut General Life Insurance Company ("CGLIC").

## PRELIMINARY STATEMENT

As was noted in the PSAC's Memorandum of Law in support of its Motion for Summary Judgment (Dkt. 20-1), this case is a relatively straightforward claim for benefits, brought by PSAC in its capacity as an "authorized representative" of several of its patients under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 *U.S.C.* § 1132(a)(1)(B).

In moving for Summary Judgment, however, CGLIC needlessly complicates the issue in dispute by both mischaracterizing the nature of PSAC's claims and scrambling to manufacture exclusionary provisions in the applicable benefit plans that simply do not exist. For example, CGLIC dedicates several pages of its brief rebutting two arguments that PSAC has never even raised: (1) that the "Schedule" contained in the applicable plans contains an independent grant of coverage; and (2) that a regulation promulgated by the New Jersey State Board of Medical Examiners requires coverage of facility fees submitted by single-room outpatient

surgical facilities similar to the one operated by PSAC.

On the points that PSAC actually asserts in support of its claim, CGLIC's brief is really nothing more twenty some odd pages of attempting to explain why the four-word phrase "Other Health Care Facility" unambiguously excludes from its purview single-room outpatient surgical facilities. In doing so, CGLIC relies upon numerous "logical inferences" and "cannons of construction," but not once points to specific language within the plan that either definitively excludes single-room outpatient surgical facilities from the definition of Other Health Care Facility, or expressly limits the services provided by an Other Health Care Facility covered under the plans to inpatient care. Instead, CGLIC asks this Court to rubber-stamp its prior denials based on little more than smoke and mirrors.

Finally, CGLIC's moving papers also inexplicably fail to address three critical legal principles that must guide the Court's analysis of this motion. First, when determining whether any ambiguity in the plans exists with respect to the disputed coverage, the Court must conduct its analysis based upon the reasonable expectations of the "average" policyholder. Second, because it is seeking to enforce a purported coverage exclusion relative to Other Health Care Facilities, CGLIC bears the burden of demonstrating that the exclusion in question both exists under the terms and conditions of the plans, and also applies to PSAC's application for benefits on behalf of its patients. And finally, any and all doubts as

to the existence of coverage *must* be resolved in favor of the insured.

In all, CGLIC's Motion for Summary Judgment must be denied because CGLIC fails to establish conclusively that PSAC cannot qualify as an Other Health Care Facility *and* that services payable to an Other Health Care Facility are limited to inpatient care. First, the definition of "Other Health Care Facility" under the plans is not unambiguous to the average policyholder. Second, CGLIC cannot irrefutably demonstrate that an exclusionary clause within the plan applies. And finally, PSAC's patient-assignees are entitled to coverage here to the full extent any fair interpretation will permit. As such, CGLIC cannot sustain its motion for summary judgment, which this Court should deny in its entirety.

## STATEMENT OF FACTS

The facts relevant to this Motion for Summary Judgment are set forth in the Local Civil Rule 56.1 Statement of Facts in Support of Motion for Summary Judgment (Dkt. 20-2), which was filed as an exhibit to PSAC's Notice of Motion for Summary Judgment (Dkt. 20), and is hereby incorporated by reference.

## LEGAL ARGUMENT

### I. STANDARD OF REVIEW

The standard of review applicable to CGLIC's Motion for Summary Judgment is identical to the standard of review set forth in PSAC's Memorandum of Law in Support of its Motion for Summary Judgment (Dk. 20-1), which is

hereby incorporated by reference. To that end, this Court should adjudicate CGLIC's motion for summary judgment pursuant to the following maxims. First, the propriety of CGLIC's prior denial of the benefits here in issue should be reviewed *de novo* and not afforded any deference. Second, any ambiguities in the provisions governing coverage of the disputed benefits in the underlying plans must be read in favor of the beneficiaries, PSAC's patients. And finally, if PSAC, on behalf of its patients, can proffer a fair and reasonable interpretation of the provisions governing coverage, it (not CGLIC) is entitled to summary judgment because the only material issues disputed herein relate to plan interpretation.

## II.   THE DEFINITION OF OTHER HEALTH CARE FACILITY IS NOT UNAMBIGUOUS TO THE "AVERAGE" INSURED

In its brief, CGLIC spends the better part of eight pages detailing how the term Other Health Care Facility "unambiguously" does not include PSAC. Db11-18. In doing so, CGLIC relies upon, among other things, several Latin phrases, proffered as "canons of contract construction." Notably absent from CGLIC's analysis, however, is any mention of the "average policyholder," from whose perspective an insurance contract will be reviewed for ambiguities. *See Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 247 (1979); *see also Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 N.J. 257, 269 (1979) (requiring that a reviewing court consider the "objectively reasonable expectations" of the insured for the purpose of rendering a "fair interpretation" of the boundaries of insurance coverage).

As the New Jersey Supreme Court noted in *Kievit v. Loyal Protective Life Ins. Co.*, 34 N.J. 475 (1961):

> When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "***to the full extent that any fair interpretation will allow***."

*Id.* at 482-83 (quoting *Danek v. Hommer*, 28 N.J. Super. 68, 76 (App. Div. 1953), *aff'd* 15 N.J. 573 (1954)). Courts in this district have long adhered to this maxim. For example, in *Fidelity & Casualty Co. v. Carll & Ramagosa, Inc.*, 243 F. Supp. 481 (D.N.J. 1965), this Court, citing to *Kievit*, stated:

> Solution of a problem of construction of an insurance policy must be approached with a well settled doctrine in mind. If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. ***Courts are bound to protect the insured to the full extent that any fair interpretation will allow***.

*Id.* at 485 (citing *Kievit*, 34 N.J. at 483). So the starting point for analyzing whether a particular provision in an insurance contract is ambiguous is to determine if the disputed language is capable of multiple meanings when viewed through the lens of the average policyholder. And when evaluating an insurer's interpretation of a term, "courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question." *Id.*

Here, it is unquestionable that the insertion of the mere sentence or two in

the plans would place the resolution of the current dispute beyond reproach. For example, if CGLIC desired to limit coverage of outpatient surgical procedures to facilities satisfying the definitional requirements of a Free-Standing Surgical Facility under the Plan, a mere sentence specifically stating as such does the trick. Similarly, if compensable facility services provided by an Other Health Care Facility were truly limited to inpatient care, one more sentence, or even just a few additional words would firmly resolve the issue. But these specific exclusions are contained nowhere in the plans, with CGLIC suggesting that the Court should infer their existence based upon other, unrelated provisions. Db9-18, 21-23.

### III. CGLIC CANNOT IRREFUTABLY DEMONSTRATE THAT AN EXCLUSIONARY CLAUSE WITHIN THE PLAN APPLIES

In arguing that *Brunswick Surgical Ctr., LLC v. Cigna Healthcare*, 2010 U.S. Dist. LEXIS 85043 (D.N.J. Aug. 18, 2010) establishes "as a matter of law in the District of New Jersey that the grant of Covered Services for [an] Other Health Care Facility in the CIGNA Open Access Plan unambiguously does not cover unlicensed, one-room surgical practices such as Plaintiff, Db9 (emphasis removed), CGLIC brazenly misstates the scope and breadth of Judge Thompson's opinion.[1] To wit, even assuming *arguendo* that the plans at issue in *Brunswick Surgical* were identical to those in issue in this case, Judge Thompson

---

[1] Due to scrivener's error, Judge Thompson's opinion in *Brunswick Surgical* is referred to repeatedly in PSAC's initial brief (Dkt. 20-1) as Judge Wolfson's opinion.

acknowledged that her decision was based entirely upon the claimant's failure to put forward a reasonable interpretation of the term Other Health Care Facility. *Id.* at 16-17.

There, the plaintiff asserted that Other Health Care Facility must be read to include ***any*** facility "recognized" by the New Jersey Department of Health and Senior Services ("DHSS"). The Court concluded that such an interpretation was not reasonable because it was overbroad and it would render other provisions of the underlying plans superfluous. *Id.* at *17. The Court also inferred that CGLIC's inclusion of specific language limiting coverage of Free Standing Surgical Facilities to those facilities meeting certain standards necessarily excludes from coverage any surgical facility that fails to meet those requirements. *Id*. at *18-19.

But as was explained in PSAC's moving brief, *Brunswick Surgical* does not adequately address several glaring features of the plan in issue here that renders it inapposite. For example, the plain meaning of the term "Other Health Care Facility," which is the starting point of any analysis of whether or not PSAC's Surgical Practice qualifies – particularly in the absence of a "real" definition, *id.* at *16 – quite literally means healthcare facilities "not included" among those specifically enumerated elsewhere in the plan. *Merriam-Webster's Collegiate Dictionary* 878-879 (11th ed. 2003). This is further supported by the "definition" set forth in the plan itself, whereby Other Health Care Facility is defined merely

- 7 -

"as a facility other than a Hospital or hospice facility," Certification of John W. Leardi (Dkt. 20-3) ("Leardi Cert.") at Exhibit ("Ex.") R, Plan at 57. Likewise, Judge Thompson's conclusion that "any colorable definition of 'Other Health Care Facility' that would cover Plaintiffs' surgical practice would almost certainly also cover any 'Free-standing Surgical Facility,' rendering that item superfluous," *Id.* at \*19, is belied by a presumably purposeful example of precisely this type of definitional overlap amongst defined terms whereby Skilled Nursing Facility is both listed as an Other Health Care Facility and a separately-defined facility-type in the "Definitions" section of the plan. Leardi Cert. at Ex. R., Plan at 57-58.

But the more critical failure of Judge Thompson's opinion in *Brunswick Surgical* is the Court's failure to recognize that the burden to establish the applicability of a coverage exclusion, whether express or implied, fall on the plan administrator, or in this case, CGLIC. *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992); *see also Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576, 580 (6th Cir. 2002) ("ERISA places the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator."); *Frerking v. Blue Cross-Blue Shield of Kan.,* 760 F. Supp. 877, 881 (D. Kan. 1991) (noting that "it is also well-established that the burden is upon the insurer to demonstrate that the insured's claim falls within the terms of the exclusionary clause, and that such clauses are interpreted narrowly").

Indeed, "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of the exclusion or exception, designed to limit the protection, a strict interpretation is applied." *Fidelity & Casualty*, 243 F. Supp. at 485 (citing *Cal-Farm Ins. Co. v. Boisseranc*, 151 Cal.App.2d 775, 781 (D.C. App. 1957)); *see also Kievit*, 34 N.J. at 483 ("[w]here particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective"). So "the burden of proving facts sufficient to bring the occurrence clearly within the exclusionary clause is upon the insurer." *Fidelity & Casualty*, 243 F. Supp. at 486 (citing *Liberty Mut. Ins. Co. v. Hercules Powder Co.*, 224 F.2d 293, 294 (3d Cir 1955) ("when a party chooses the language which he puts into a form contract, in case of doubt of its effect the general rule is that it is interpreted against him")).

So here, the burden falls on CGLIC to irrefutably establish that its interpretation of the disputed provisions is applicable. In a nutshell, CGLIC's argument in that regard is two-fold. First, PSAC's outpatient surgical facility cannot qualify for outpatient facility benefits because it does not qualify as either a Free Standing Surgical Facility or an Other Health Care Facility. Db9-18. And second, even if PSAC's facility could qualify as an Other Health Care Facility, the

term's "intrinsic" definition must be read to cover inpatient facility fees only.

As to the first point, PSAC's outpatient surgical facility, by virtue of its designation as a Surgical Practice as the term is defined by both *N.J.S.A.* 26:2H-12(g)(5) and *N.J.A.C.* 8:43A-1.3, is not a "Free-Standing" surgical facility. Instead it is a facility that is owned exclusively by licensed physicians as an extension of their respective medical practices. Leardi Cert. at Ex. A, Complaint at ¶ 5; Leardi Cert. at Ex. B. And while CGLIC spends a great deal of time in its brief explaining how because PSAC comes close to satisfying the definition of a Free-Standing Surgical Facility in the plans is surely cannot be an Other Health Care Facility, Db9-11, this simply misses the point. Whether it is for purposes of determining benefit levels or ensuring quality assurance, a single-room facility owned by a group of physicians is not comparable at all to a larger, multiple-room surgical facility, with non-physician ownership, and credentialing privileges that do not require facility-ownership or employment by all treating providers. Surgical Practices are a unique creature of New Jersey law; and because CGLIC's Open Access Plans are not limited to New Jersey, it would be terribly cumbersome for the drafters of CGLIC's plans to account for each and every variance in the states within which its insured live and seek care. Thus, utilization of a "catch-all"

facility designation is not only reasonable, but somewhat necessary.[2]

The larger point, however, is that the manner in which Other Health Care Facility is defined and referenced throughout the plans does not in and of itself present an exclusion that CGLIC can point to as dispositive here. Instead, CGLIC merely references some language limiting the amount of inpatient coverage available in an Other Health Care Facility, then asks this Court to literally "infer" that these limitations mean that an Other Health Care Facility and the facility services it may seek covered benefits for are limited to inpatient services. But this simply does not jive with the plan when read in it's entirely.

For example, in the schedule of benefits, which admittedly does *not* create an independent grant of coverage under the plan, coverage of Outpatient Facility Services, which include payment for use of an Operating Room, Recovery Room, Procedures Room, Treatment Room, and/or Observation Room, are not limited to any particular type of outpatient facility, nor is the term defined within the Plan. Leardi Cert at Ex. R, Plan at 16. Moreover, in each plan's description of "Covered Expenses," charges made on its own behalf by an Other Health Care Facility are specifically acknowledged as covered with the sole limitation being that inpatient

---

[2] CGLIC's assertion that providing coverage for outpatient facility services provided by PSAC as an Other Health Care Facility would open a Pandora's Box of claims submitted for services rendered "any place in which a doctor provides services," Db14, is utterly absurd. The term Other Health Care Facility still plainly requires that the institution seeking benefits be a **healthcare facility**, and not "a private home, a gas station, a hotel, or the archetypical doctor's office."

services provided by an Other Health Care Facility are limited by the Schedule. Leardi Cert. at Ex. R, Plan at 25. No limitations, however, are imposed upon Outpatient Services provided by Other Health Care Facilities. In fact, nowhere in the plan is coverage for services provided at an Other Health Care Facility limited to Inpatient Services. Leardi Cert. at Ex. R., Plan at 17, 25. This is consistent with the manner in which coverage and/or benefit levels for Outpatient and Inpatient Services are described for other types of facilities throughout each plan.[3]

In sum, CGLIC's denial of benefits with respect to the services here in dispute was not based upon a clear and unambiguous exclusionary clause. Rather, they ask the Court to literally read terms into the underlying plan documents that simply do not exist. Perhaps CGLIC's interpretation of its plans is eminently reasonable. And perhaps CGLIC's interpretation of its plans is precisely what the drafters intended. But even if this were the case, CGLIC's failure to more explicitly spell out its purported exclusions was careless, at best. And "[i]t is the careless things as well as the foolish things that confound the wise;" to say nothing of the average policyholder. *Fidelity & Casualty*, 243 F. Supp. at 488.

---

[3] For example, Inpatient Services provided by a Hospital are identified separately on both the schedule of benefits and the description of Covered Services contained in each plan, while the benefit level applicable for Outpatient Facility Services provided by a Hospital defaults to the levels set forth on the schedule of benefits, which again, apply to all types of facilities. Leardi Cert. at Ex. R., Plan at 15-16, 25.

## IV. CGLIC INSUREDS ARE ENTITLED TO COVERAGE TO THE FULL EXTENT ANY FAIR INTERPRETATION WILL ALLOW

"Insurance contracts are *unipartite* in character. They are prepared by the company's experts, men learned in the law of insurance who serve its interest in exercising their draftsmanship art. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured." *Fidelity & Casualty*, 243 F. Supp. at 485 (citing *Barker v. Iowa Mut. Ins. Co.*, 241 N.C. 397 (1955). Not only is this the position taken by the New Jersey Supreme Court, *Kievit*, 34 N.J. at 482, but also by this Court with respect to "insurance contracts," *Fidelity & Casualty*, 243 F. Supp. at 487, and the Second, Fourth, Seventh, and Ninth Circuits relative to ERISA-governed benefit plans. *See Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 311-12 (7th Cir. 1992); *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir. 1992); *Masella v. Blue Cross & Blue Shield*, 936 F.2d 98, 100 (2d Cir. 1991); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir. Cal. 1990).

Here, it is clear that PSAC's interpretation of the term Other Health Care Facility as including Surgical Practices – thereby extending coverage for Outpatient Facility Services provided by it as a Surgical Practice – is a fair and reasonable interpretation of the underlying plans:

*First*, the plans define Other Health Care Facility as any facility other than a

Hospital or hospice facility. Examples of Other Health Care Facilities include, ***but are not limited to***, licensed skilled nursing facilities, rehabilitation Hospitals, and subacute facilities. As such, the Surgical Practice operated by PSAC is not specifically excluded from the definition of Other Health Care Facility. Leardi Cert. at Ex. R., Plan at 57. Moreover, in each plan's description of "Covered Expenses," charges made on its own behalf by an Other Health Care Facility are specifically acknowledged as covered; with a limitation on Inpatient Services but no limitation on Outpatient Services. Leardi Cert. at Ex. R, Plan at 25.

*Second*, the term Other Health Care Facility also appears on both the Schedule of Benefits and the description of Covered Services contained in each plan, wherein, again, limitations are specifically imposed upon Inpatient Services provided by Other Health Care Facilities, but no limitations are imposed upon Outpatient Services provided by Other Health Care Facilities. In fact, nowhere in the plan is coverage for services provided at an Other Health Care Facility limited to Inpatient Services. Leardi Cert. at Ex. R., Plan at 17, 25. 60.  This is consistent with the manner in which coverage and/or benefit levels for Outpatient and Inpatient Services are described for other types of facilities throughout each plan. To wit, Inpatient Services provided by a Hospital are identified separately on both the schedule of benefits and the description of Covered Services contained in each plan, while the benefit level applicable for Outpatient Facility Services provided by

a Hospital defaults to the levels set forth on the schedule of benefits, which again, apply to all types of facilities. Leardi Cert. at Ex. R., Plan at 15-16, 25.

*And finally*, there are instances in the plans themselves where the provision of Outpatient Services by an Other Health Care Facility is specifically contemplated. For example, in the section of the plan defining coverage for Hospice Care Services, the plans provide for coverage of physical, occupational, and speech therapy provided by an Other Health Care Facility, each of which is routinely provided for as an Outpatient Service. Leardi Cert. at Ex. R, Plan at 27.

This Court should give effect to the objectively reasonable expectations of PSAC's patient-assignees for purposes of rendering a fair interpretation of the boundaries of insurance coverage. Such a result is consistent with the policies underlying ERISA, and requires GCLIC's motion to be denied.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff Pain and Surgery Ambulatory Center, P.C., respectfully requests that the Motion for Summary Judgment filed by Defendant Connecticut General Life Insurance Company be denied.

DATED:  March 12, 2012            Respectfully submitted,

**BUTTACI & LEARDI, LLC**
*Attorneys for Plaintiff*
*Pain and Surgery Ambulatory Center, P.C.*


By:        /s/ John W. Leardi
            John W. Leardi
            A Member of the Firm