NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAIN & SURGERY AMBULATORY CENTER, P.C., as assignee and authorized representative of CHRISTINE DENOLA, CELIA GONZALEZ, IRENE PERCIA, ROBERT POST, DEIRDRA SCARPULLA, and SUSAN WILAMOWSKI,<br><br>Plaintiff,<br><br>vs.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY,<br><br>Defendant. | No. 11-cv-5209 (KSH)(PS)<br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

This matter is before the Court on cross-motions for summary judgment brought by plaintiff Pain & Surgery Ambulatory Center, P.C. ("PSAC") and defendant Connecticut General Life Insurance Company ("CGLIC"). The motions, boiled down, ask one question: whether PSAC fits the definition of an "Other Health Care Facility" within the meaning of the CGLIC-administered policies that it has been assigned. For the reasons that follow, the Court finds that the policies' language unambiguously does not incorporate coverage of PSAC's facilities fees. Therefore, CGLIC's motion for summary judgment is granted and PSAC's motion for summary judgment is denied.

## II. Factual Background and Procedural History

### A. The Parties

PSAC is the owner and operator of an outpatient surgical facility in Wyckoff. (PSAC Stmt. Facts ¶ 2; CGLIC Response ¶ 2.) PSAC's facility consists of "one room dedicated for use as an operating room" and a separate recovery area. (PSAC Stmt. Facts ¶ 3; CGLIC Response ¶ 3; *see also* CGLIC Stmt. Facts ¶ 1 ("single-room ambulatory surgery center"); PSAC Response ¶ 1.) The facility, which serves as the extension of several physicians' medical practices, is unlicensed, but PSAC contends that under New Jersey law, it is required only to register with the Department of Health and Senior Services and need not obtain a license in order to operate. (CGLIC Stmt. Facts ¶ 2–3; PSAC Response ¶ 2–3.) Patients at PSAC are charged two types of fees: "professional fees" charged "with respect to professional medical and surgical services provided by PSAC's Physician-Shareholders" and "facility fees [to] compensate PSAC for the costs associated with operating and maintaining a safe, clean, comfortable, and [Centers for Medicare and Medicaid Services]-certified surgical facility." (PSAC Stmt. Facts ¶ 7; CGLIC Response ¶ 7.)

CGLIC is a wholly-owned subsidiary of Connecticut General Corporation, which, in turn, is a wholly-owned subsidiary of CIGNA Holdings, Inc. (PSAC Stmt. Facts ¶ 9; CGLIC Response ¶ 9.) CGLIC "offers, underwrites, and administers" health plans which reimburse claimants for covered services and products. (PSAC Stmt. Facts ¶ 10; CGLIC Response ¶ 10.)

PSAC is the assignee and authorized representative of Christine Denola, Celia Gonzalez, Irene Percia, Robert Post, Deirdra Scarpulla, and Susan Wilamowski (collectively "assignors"). Each assignor is a beneficiary of an employer-sponsored health plan that CGLIC administers. (PSAC Stmt. Facts ¶¶ 12–17; CGLIC Response ¶¶ 12–17.) Upon receiving services from PSAC,

they assigned to PSAC plan benefits arising from those services. (PSAC Stmt. Facts ¶ 18; CGLIC Response ¶ 18.) CGLIC denied PSAC's claims for reimbursement of facility fees, citing the fact that PSAC does not qualify as a "Free Standing Surgical Facility" under the assignors' plans. (PSAC Stmt. Facts ¶¶ 23–25, 29–31, 34–36, 39–41, 44–46, 49–51; CGLIC Response ¶¶ 23–25, 29–31, 34–36, 39–41, 44–46, 49–51.)

### B. The Policies' Language

This case presents one issue: whether PSAC satisfies the policies' definition of an "Other Health Care Facility" and is thus entitled to be paid facility fees. The parties agree that "[e]ach Plan contains identical language relevant to the claims at issue here, with non-material variations." (CGLIC Stmt. Facts ¶ 7; PSAC Response ¶ 7.) For ease of reference, the Court will cite to the language in the policy of Christine Denola unless otherwise noted. (*See generally* Denola Policy, appended to CGLIC Moving Br., Lyddon-Kelly Decl., Ex. A ("Denola Pol.").)

The policies reimburse patients only for certain enumerated "Covered Expenses." (*See id.* at 20.) Two of these enumerated expenses are pertinent to this case. First, the policies cover "charges made by a Free-Standing Surgical Facility, on its own behalf for medical care and treatment." (*Id.*) Second, the policies cover

> charges made on its own behalf, by an Other Health Care Facility, including a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment; except that for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule.

(*Id.*)

The parties agree that PSAC's facility does not qualify as a Free-Standing Surgical Facility. The policies provide an eight-point definition of a Free-Standing Surgical Facility, and

3

PSAC's facility falls short of two requirements: it does not "maintain[] at least two operating rooms" and it is not "licensed in accordance with the laws of the appropriate legally authorized agency" because it operates pursuant to a registration with the Department of Health and Senior Services rather than a license.  (*See id.* at 55.)

What the parties dispute is whether PSAC's facility qualifies as an "Other Health Care Facility."  The policies define the term "Other Health Care Facility" as follows: "The term Other Health Care Facility means a facility other than a Hospital or hospice facility.  Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."  (*Id.* at 57.)

### C. Procedural History

On August 3, 2011, PSAC filed a complaint in Superior Court, Bergen County, asserting a claim for plan benefits pursuant to ERISA.  [D.E. 1, Exh. A.]  On September 9, 2011, CGLIC removed the case to federal district court because PSAC's claim raised a federal question.  [D.E. 1.]  Discovery consisted mostly of an exchange of the administrative record.

On February 24, 2012, PSAC and CGLIC each filed a motion for summary judgment. [D.E. 19, 20.]  On March 12, 2012, each filed a brief in opposition to the other's motion.  [D.E. 21, 22.]  On March 16, 2012, the Court denied the parties' joint request for permission to file reply briefs.  [D.E. 23.]  On June 7, 2012, the Court held oral argument.  [D.E. 30.]

### III. Discussion and Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As earlier indicated, there is one issue for

resolution presented: whether PSAC fits the definition of an "Other Health Care Facility" within the meaning of the CGLIC-administered policies that it has been assigned.

A court's review of a denial of benefits under ERISA is ordinarily de novo. *McLeod v. Hartford Life & Accident Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," however, then review is under the arbitrary and capricious standard, in which "the Court may overturn" the administrator's decision "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 115; *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

In this case, five of the six policies at issue include clauses giving discretionary authority to CGLIC as administrator. These clauses state:

> The Plan Administrator delegates to [CGLIC] the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to [CGLIC] the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.
>
> (Denola Pol. at 52.)

PSAC argues that this language runs afoul N.J.A.C. 11:4-58.3, which provides:

> No individual or group health insurance policy or contract, individual or group life insurance policy or contract, individual or group long-term care insurance policy or contract, or annuity contract, delivered or issued for delivery in this State may contain a provision purporting to reserve sole discretion to the carrier to interpret the terms of the policy or contract, or to provide standards

5

> of interpretation or review that are inconsistent with the laws of this State. A carrier may include a provision stating that the carrier has the discretion to make an initial interpretation as to the terms of the policy or contract, but that such interpretation can be reversed by an internal utilization review organization, a court of law, arbitrator or administrative agency having jurisdiction.

Putting aside CGLIC's argument that this provision does not apply because the policies here are self-funded and thus not insurance, a more fundamental problem with PSAC's argument exists. The regulation prohibits only provisions "purporting to reserve *sole* discretion." N.J.A.C. 11:4-58.3 (emphasis added). The policies in this case do not grant CGLIC sole discretion; they explicitly provide for an independent review procedure and preserve the right for a civil action, such as this one, to be brought under ERISA. (*See* Denola Pol. at 47–48.) Thus, the policies' language falls within the second sentence of N.J.A.C. 11:4-58.3, which explicitly allows the carrier to make an "initial interpretation" so long as "such interpretation can be reversed by an internal utilization review organization, a court of law, arbitrator, or administrative agency having jurisdiction."

This interpretation of the regulation's effect finds support in *Baker v. Hartford Life Insurance Co.*, No. 08-6382, 2010 WL 2179150 (D.N.J. May 28, 2010) (Wolfson, J.), *aff'd*, 440 F. App'x 66 (3d Cir. 2011). There, confronting a similar argument, Judge Wolfson noted the absence of any justification for the inference that the regulation should lead to *de novo* interpretation of a policy; observed that ERISA discretion delegations do not actually afford "sole discretionary authority" because they permit challenge in a court of law; and expressed concerns that such an interpretation could face a preemption-based challenge. *Baker*, 2010 WL 2179150, at *11. PSAC describes this interpretation as "absurd" because federal law requires that all ERISA plans allow benefit-denial challenges in federal court. (PSAC Br. Supp. Summ. J. 10 n.1 (discussing Third Circuit opinion).) But the New Jersey regulation is more expansive

than covering just ERISA plans, and PSAC's reading would make the second sentence of the provision meaningless.

Accordingly, the five policies with the discretionary clause are entitled to review under the arbitrary and capricious standard, and the policy without the clause is reviewed de novo. As explained below, the same outcome ensues under either standard.

When reviewing an administrator's decision for abuse of discretion, a court's first task is to determine if the plan's terms are ambiguous, meaning that they are "subject to reasonable alternative interpretations." *See Adair v. Abbott Severance Pay Plan for Employees of Kos Pharms.*, 781 F. Supp. 2d 238, 244 (D.N.J. 2011) (Hillman, J.) (citing *Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)). If the terms are unambiguous, then any plan administrator action that is inconsistent with the plan's terms is arbitrary, but if the terms are not ambiguous, then a court reviews to assess whether the administrator's interpretation is reasonable. *Id.* (citation omitted). "Whether an ERISA plan is ambiguous is a question of law." *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir. 1996) (citing *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 92 (3d Cir. 1992)).

### B. The *Brunswick Surgical Center* Decision

Both parties discuss in depth Judge Thompson's decision in *Brunswick Surgical Center, LLC v. CIGNA Healthcare*, No. 09-5857, 2010 WL 3283541 (D.N.J. Aug. 18, 2010). As an unpublished decision of another district court judge, that decision is "not precedential or binding authority." *Ingram v. Twp. of Deptford*, No. 11-2710, 2012 WL 868934, at *4 n.1 (D.N.J. Mar. 13, 2012) (Simandle, J.). However, because the policy language in *Brunswick Surgical Center* is very close to the policies' language in the present case, and because the parties devote substantial

attention to the case, the Court is satisfied that the opinion warrants discussion and consideration.

The plaintiffs in *Brunswick Surgical Center* operated a one-room surgical facility that provided outpatient care for patients of a doctor with a connected office. 2010 WL 3283531, at *1. The patients receiving services at the facility assigned their claims to either the doctor or the plaintiffs. *Id.* Like the present case, the dispute there involved facility fees for the costs of "an operating room, recovery room, holding area, pharmacy, and supplies." *Id.* The policies in *Brunswick Surgical Center* contained identical definitions of "Free-Standing Surgical Facility" and "Other Health Care Facility" as the policies in the present case. *See id.* at *2.

The *Brunswick Surgical Center* plaintiffs asserted that they fell within the scope of the plan's definition of the term "Other Health Care Facility." *Id.* at *5. Judge Thompson first noted that "the Policy's definition of 'Other Health Care Facility' is not really a definition at all and provides no aid in interpreting the term" because it does nothing but list two excluded components of the term (hospital or hospice facility) and three included components of the term (licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities). *Id.* She then noted the interpretive maxim that contracts "must be interpreted in a way that avoids making certain provisions redundant." *Id.* at *6 (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997); *Cumberland Cnty. Improv. Auth. v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 497 (App. Div. 2003)). With that in mind, Judge Thompson observed that if taken literally, the term "Other Health Care Facilities" would subsume virtually all health care facilities. *Id.* She took special note of the provision for "Free-Standing Surgical Facilities," which went out of its way to exclude one-operating-room facilities from its definition; such an explicit exclusion, she observed, would be rendered meaningless by the plaintiffs' proffered broad definition of

"Other Health Care Facilities." *See id.* Accordingly, Judge Thompson found that "the policy seems designed to restrict coverage only to those surgical facilities that meet certain criteria . . . [and] that the term unambiguously excluded small, unlicensed surgical practices of the type operated by [plaintiffs]." *Id.* at *7. Therefore, she held that the defendant's interpretation prevailed even under a de novo standard of review. *Id.*

### C. Analysis

These policies state that "[t]he term Other Health Care Facility means a facility other than a Hospital or hospice facility. Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities." (Denola Pol. 57.) Taken literally, the definition would mean that absolutely any facility would qualify so long as it is neither a hospital nor a hospice. Such a broad definition would be patently absurd for two reasons. First, it would render meaningless the definitions and provisions for coverage by other, specific types of facilities, such as the aforementioned Free-Standing Surgical Facilities. Second, it would make the "examples" provided in the second sentence of the definition mere surplusage; they would serve as nothing more than randomly selected types of facilities other than hospitals and hospices, placed in the list as a friendly reminder as to what type of non-hospital and non-hospice facilities exist.

PSAC does not contend otherwise; indeed, it faults the *Brunswick Surgical* plaintiffs for suggesting an interpretation as expansive as that one, noting that the outcome of that case turned, in part, on plaintiffs' failure to "proffer[] at least one reasonable interpretation" of the term. (PSAC Moving Br. 17.) Noting the prevalence of small surgical practices in New Jersey, PSAC argues for a narrower definition of "Other Health Care Facilities" that includes surgical practices providing outpatient facility services. (*Id.* at 21.) The problem with that definition is that while

9

it has the benefit of being narrower than the *Brunswick Surgical* plaintiffs' definition, it is untethered from the text of the policies' language. Thus, though it might be a sensible or reasonable avenue of coverage for the policies to incorporate, there is simply no basis in the actual policies for the Court to infer such coverage. PSAC's proffered definition fails to provide any way for the Court to discern a limit on the definition of "Other Health Care Facility" and is thus an unreasonable interpretation of the term.

CGLIC offers a different interpretation that is more reasonable and takes into account the entirety of the plan's coverage scheme. CGLIC notes that the definition of "Other Health Care Facility" excludes hospitals and hospice facilities, which have specific definitions elsewhere in the plans. (CGLIC Moving Br. 17.) The result of double-inclusion of such facilities would have been inconsistent levels of coverage. (*Id.* at 18 (citing Denola Pol. at 11).) The fact that the plan did not expressly exclude other already-covered facilities, such as Free-Standing Surgical Facilities, from coverage is a reflection of the fact that, CGLIC argues, "the Other Health Care Facility clause plainly deals with inpatient facilities." (*Id.*) To support this interpretation further, CGLIC points out that the fee schedule's only reference to Other Health Care Facilities establishes a sixty-day annual cap on coverage, as opposed to the apportionment of payment to surgical centers in terms of a percentage of cost rather than the span of time. (*Id.* (citing Denola Pol. at 16).) The Court finds that this explanation comprehensively utilizes each part of the "Other Health Care Facility" definition to demonstrate why the exclusion of hospitals and hospice facilities, and the inclusion of "licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities," together lead to the conclusion that surgical centers do not fall within the scope of the definition.

Of course, the Court need not develop and the parties need not explain a comprehensive framework for what particular facilities do and do not fit within the "Other Health Care Facility" provision. The only question before the Court is whether PSAC qualifies. The core problem with PSAC's argument is that the policies include a very thorough and carefully drafted definition of a Free-Standing Surgical Facility. PSAC would fit that definition if it were licensed and possessed a second operating room, but it is not and does not. For that reason, it is simply unreasonable for the Court to get around these restrictions and read the plans as including a catch-all "Other Health Care Facility" definition that is so broad that it renders meaningless the detailed limitations of other portions of the definition.

PSAC argues "that the burden to establish the applicability of a coverage exclusion, whether express or implied, fall on the plan administrator" (PSAC Br. Opp. Mot. Summ. J. 8 (citing cases)), but that argument misconstrues the inquiry. The question here is not whether an exclusion applies, but rather whether PSAC's facility falls within coverage in the first place. It is a question of inclusion, not exclusion. PSAC has failed to establish that it is an included facility entitled to facility fees under the plans.[1]

### IV. Conclusion

For the reasons set forth above, the Court finds that PSAC is not entitled to coverage for its facility fees under the policies it has been assigned. Therefore, CGLIC's motion for summary

---

[1] At oral argument, the Court inquired about the restrictions that exist in the policies. The parties were unable to provide a non-speculative response to questions that easily arise: Why is a one-room surgical facility not entitled to facility fee coverage while a two-room surgical facility is? Is such a restriction a form of cost containment because it hinders a doctor from charging a facility fee for what might otherwise be a regular office visit? Is the restriction a substantive issue in the delivery of health care? The questions remain, but because the sole issue in this case involves interpretation of the policies' terms, the absence of answers does not affect the outcome of the present motions.

11

judgment is granted and PSAC's motion for summary judgment is denied.  An appropriate order will be entered.

                                                /s/ Katharine S. Hayden
Date: August 30, 2012                                Katharine S. Hayden, U.S.D.J.